UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
BRIAN HAMILTON,

                    Plaintiff,

    -against-

THE CITY OF NEW YORK,
CHRISTOPHER SCHILLING,
EVAGELOS DIMITRAKAKIS, and
JOHN DOES 1-4,

                 Defendants.
-------------------------------X

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

        Plaintiff Brian Hamilton, by his attorneys, Lumer & Neville, as and for his Complaint, hereby alleges as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

        1.    At all times hereinafter mentioned, plaintiff Brian Hamilton was an adult male resident of Kings County, within the State of New York.

        2.    At all relevant times hereinafter mentioned, defendant, City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

        3.    At all relevant times hereinafter mentioned, defendant Christopher Schilling (tax identification number 926084) was employed by the City of New York as a member of the NYPD.  Schilling is sued in both his official and individual capacities.

4. At all relevant times hereinafter mentioned, defendant Evagelos Dimitrakakis (tax identification number 932554) was employed by the City of New York as a member of the NYPD. Dimitrakakis is sued in both his official and individual capacities.

5. At all relevant times hereinafter mentioned, defendants John Does 1-4, whose true identities are known to the defendants but not to plaintiff, were employed by the City of New York as members of the NYPD. The Doe defendants are sued in both their official and individual capacities.

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

7. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Eastern District of New York, where the plaintiff and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

## RELEVANT FACTS

8. On August 15, 2011, at or between 8:00 p.m. and 9:00 p.m., plaintiff was lawfully present as a passenger in a vehicle, along with two other adult males, Richard Hammond and James Kelly.

9. At this time, the vehicle was being driven by Hammond in the vicinity of Riverdale Avenue and Junius Street, in Brooklyn, New York.

10. At this time, the driver of the vehicle was directed to pull over and stop his vehicle by two members of the NYPD wearing plainclothes, who were either one or both

of the individually named defendants, or one or two of the Doe defendants.

11. The police officers who stopped the vehicle were joined shortly thereafter by several other members of the NYPD, so that Schilling, Demitrakakis, and the Doe defendants were all present.

12. All of the above individual defendants were then assigned to the Brooklyn North Narcotics Bureau ("BNND")

13. Plaintiff and his two companions were searched. Neither plaintiff, nor the other passenger, James Kelly, were carrying any weapons, drugs, or contraband of any sort.

14. According to the officers present at the scene, cocaine was found in Richard Hammond's wallet. No other narcotics, drugs, or contraband of any sort, was found in the vehicle or in anyone else's possession.

15. All three men were handcuffed, arrested, and removed from the scene.

16. Plaintiff was transported to a local area police precinct station house in Kings County.

17. While plaintiff was at the station house, the arresting officer, believed to be defendant Dimitrakakis, drafted arrest paperwork concerning plaintiff's arrest, which was assigned arrest number K11679575.

18. According to said paperwork, Schilling claims that he personally observed cocaine on the floor of the vehicle, thus justifying the arrest of plaintiff for the possession of said cocaine.

19. This story is materially false.

20. No weapons, drugs, or contraband of any of sort was present in the cabin of the vehicle, other than whatever may have been found in Hammond's personal possession.

21. At no point prior to his arrest had plaintiff been engaged in any criminal conduct, nor was he engaged in any conduct that could reasonably be viewed as criminal.

22. In actuality, when the defendants placed plaintiff under arrest, they did so with the full knowledge that they lacked probable cause for the arrest.

23. The defendants fabricated the story in order to justify the unlawful seizure and arrest of plaintiff, and to provide a basis to initiate plaintiff's prosecution.

24. Dimitrakakis then forwarded the arrest paperwork based on this fabricated version of events to the Kings County District Attorney ("KCDA").

25. Dimitrakakis and/or Schilling also spoke with the KCDA about the arrest of plaintiff, at which time the defendants reiterated this falsified version of plaintiff's arrest.

26. The defendants knew and understood that the KCDA, in evaluating whether to commence a criminal prosecution against the plaintiff, was relying on the truthfulness of their statements and claims as relayed through Dimitrakakis, and was assuming that all of the defendants' factual statements were truthful in all material respects.

27. As a direct result of these allegations by the defendants, plaintiff was

criminally charged by the KCDA under 2011KN065975 with one count of Criminal Possession of a Controlled Substance in the Seventh Degree, based entirely on defendants' claim that an unspecified amount of cocaine was found on the floor of the vehicle..

28. Plaintiff was kept in custody until his arraignment.

29. Based entirely on the fabricated version of events provided by the defendants, the KCDA continued to maintain the criminal prosecution against plaintiff, requiring him to return to court on multiple occasions.

30. On November 18, 2011, plaintiff appeared in Criminal Court, Kings County, before the Hon. J. Wilson, at which time the court dismissed the case in its entirety in favor of plaintiff.

31. From the date of the arrest through the dismissal of the criminal prosecution, the individual defendants continued to maintain their fabricated story.

32. At no time did any of the individual defendants attempt to modify their prior written or oral statements, nor did they ever communicate to their supervisors or to the KCDA, that any of their own statements were inaccurate, incomplete, or false or misleading in any way.

33. Each of the defendants was aware that the plaintiff had been arrested without probable cause.

34. At no time during the arrest and processing of the arrest of plaintiff, up until his arraignment, did any of the individual defendants make any effort to intervene in the unlawful arrest of Brian Hamilton, or otherwise prevent, limit, or otherwise mitigate the

violation of plaintiff's constitutional rights by the other defendants.

35. At no time following the plaintiff's arraignment did any of the individual defendants make any effort to intervene in the malicious prosecution of Brian Hamilton and/or the denial of plaintiff's right to a fair trial through the use of fabricated evidence, or otherwise prevent, limit, or otherwise mitigate the violation of plaintiff's constitutional rights by the other defendants.

36. That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

37. As of August 2011, defendant Schilling had been a named party in at least nine (9) suits alleging various constitutional violations similar to those at issue here.

38. According to a New York Daily News article dated February 16, 2014, defendant Schilling is one of the top ten most sued NYPD members, with at least 17 suits against him that had resulted in settlements of just under $300,000.

39. The number of actions commenced in state court against the City of New York for defendant Schilling's misconduct is unknown.

40. Notwithstanding the municipal defendant's notice of defendant Schilling's ongoing misconduct and repeated violations of the United States Constitution, the City of New York has taken no steps to discipline, retrain or otherwise supervise Schilling in such a manner as to limit the likelihood that he will continue to willfully and deliberately engage in unconstitutional conduct.

## FIRST CAUSE OF ACTION

41. Plaintiff repeats the allegations contained in paragraphs "1" through "27" above as though stated fully herein.

42. Defendants Schilling, Dimitrakakis, and John Does 1-4, willfully and intentionally seized, searched, detained, and arrested plaintiff without probable cause, or otherwise caused these events to occur, or failed to intervene in their occurrence, and did so without a reasonable basis to believe such cause existed.

43. Defendants Schilling, Dimitrakakis, and John Does 1-4, willfully and intentionally subjected plaintiff to malicious prosecution and the denial of his right to due process and a fair trial, or failed to intervene in their occurrence, and did so without a reasonable basis to believe that such conduct was appropriate, reasonable, lawful, or necessary, or otherwise caused these events to occur.

44. By so doing, these defendants subjected the plaintiff to false arrest and imprisonment, and unlawful searches of person and property, denial of due process and his right to a fair trial, and malicious prosecution, and thereby violated and aided and abetted in the violation of plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

45. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

46. Plaintiff repeats the allegations contained in paragraphs "1" through "40" above as though stated fully herein.

47. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the NYPD.

48. In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

49. In October 2011, following a bench trial in New York State Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer Jason Arbeeny was convicted of planting drugs on two people and falsifying arrest reports. Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

50. Notwithstanding its awareness of the Narcotic Division's pattern of making unlawful arrests and then falsifying their records and testimony to justify and cover up this conduct, the NYPD made no effort to curb, limit, or otherwise prevent this misconduct from continuing.

51. Thus, the City of New York created, approved or condoned the practice and policy, as carried out by the Narcotics Bureau, of making wholesale arrests without probable cause in order to create false or misleading arrest numbers.

52. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

53. Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

54. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that it was deliberately indifferent to the risk that the inadequate level of supervision would lead generally to the violation of individuals' constitutional rights and caused this violation of plaintiff's rights.

55. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## THIRD CAUSE OF ACTION

56.     Plaintiff repeats the allegations contained in paragraphs "1" through "54" above as though stated fully herein.

57.     Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD and its members, including defendant Schilling. Despite ample notice of Schilling's repeated disregard for the United States Constitution and the NYPD's own rules and regulations, the municipal defendant took no meaningful steps to in response to said conduct and was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiffs rights in particular.

58.     By reason thereof, defendant has violated 42 U.S. C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

(Remainder of Page Intentionally Blank)

WHEREFORE, the plaintiff demands judgment against defendants jointly and severally as follows:

    i.    on the first cause of action, actual and punitive damages in an amount to be determined at trial;

    ii.    on the second and third causes of action, actual damages in an amount to be determined at trial;

    iii.    statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

    iv.    such other relief as the Court deems just and proper.

Dated: New York, New York
       August 13, 2014

                                  LUMER & NEVILLE
                                  Attorneys for Plaintiff

By: _/s/ Michael Lumer_

Michael Lumer, Esq.
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060